# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

CARLTON SPEER, *et al.*,                )
                                        )
     *Plaintiffs*,              )
                                        )    Case No. 3:21-cv-368
v.                                      )
                                        )    Judge Atchley
UCOR, LLC,                              )
                                        )    Magistrate Judge McCook
     *Defendant*.               )

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2] and Defendant UCOR, LLC's Motion to Dismiss [Doc. 23]. The Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2], filed October 29, 2021, originally sought to enjoin UCOR from terminating Plaintiffs on November 1, 2022. [Doc. 3 at 1]. After consultation with the parties and based on the parties' agreement that a hearing was not necessary, the Court entered a Preliminary Injunction Scheduling Order. [Doc. 12]. Plaintiffs' Supplemental Brief in Support of Preliminary Injunctive Relief likewise recognizes that termination of the Plaintiffs' employment already occurred, and they now seek preliminary injunctive relief. [Doc. 13 at 1]. Specifically, Plaintiffs seek preliminary injunctive relief to restore their employment, health insurance, and other employment benefits, and to require Defendant to provide individualized assessments for the purpose of reasonably accommodating each Plaintiff's sincerely-held religious beliefs. [*Id.*].

Plaintiffs have not carried their burden of showing that injunctive relief is appropriate and their Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2] will be **DENIED**. Because the record indicates that Plaintiffs did not exhaust their administrative remedies

prior to filing this suit, UCOR's Motion to Dismiss [Doc. 23] will be **GRANTED** and this action **DISMISSED WITHOUT PREJUDICE**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of UCOR, LLC's requirement that all employees receive a vaccination against COVID-19 and Plaintiff employees' refusal to receive the vaccination on the basis of their sincerely-held religious beliefs. Plaintiffs Carlton Speer, Malena Dennis, and Zachariah Duncan are former employees of UCOR, who bring this action on behalf of themselves and others similarly situated. [Doc. 1 at 1]. In support of their request for preliminary injunctive relief, Plaintiffs also submit the Declaration of Ryan LaRochelle [Doc. 13-1] and Cynthia Ogle [Doc. 13-2], both of whom worked for subcontractors of UCOR, and Dawn Casselton and David Casselton [Doc. 13-4 & 13-5], who worked for UCOR. Charles Malarkey, Administrative Services Manager for UCOR, declares that neither Ms. Ogle nor Mr. LaRochelle were UCOR employees and were not terminated by UCOR. [Doc. 16 at ¶¶ 26, 30, 34].

UCOR announced a mandatory vaccination program on August 26, 2021, applicable to all members of the workforce. [Doc. 16 at ¶ 6]. Employees were required to receive their first COVID-19 vaccination dose by October 1, 2021. [*Id.* at ¶ 7]. Requests for religious exemptions to the requirement were due by September 14, 2021. [*Id.* at ¶ 8]. UCOR received 103 religious exemption request forms, five of which were withdrawn. [*Id.*]. UCOR created an Accommodation Review Committee to evaluate the 98 remaining requests. [*Id.* at ¶ 9]. UCOR contends that the Committee reviewed each religious exemption request individually and contacted each employee to discuss possible accommodations. [*Id.* at ¶ 10].

After completing the individual interactive process with each UCOR employee that submitted a religious exemption request, a review team deliberated over each request. [*Id.* at ¶ 36].

2

UCOR developed a matrix to evaluate possible accommodations and determine whether they would impose an undue hardship, *i.e.* one that imposed a greater than *de minimis* cost / burden on UCOR. [*Id.* at ¶ 37]. UCOR incorporated various possible accommodations into the matrix, including weekly testing, enhanced face coverings, limited task reassignment, job reassignment, work location adjustments such as isolation or distancing, leave of absence, and telework. [*Id.* at ¶ 38].

Plaintiffs Speer, Dennis, and Duncan, as well as Mr. and Mrs. Casselton, were informed that their religious exemption requests had been denied on October 4, 2021, and they were given an additional week to obtain the vaccine. [*Id.* at ¶ 54]. They were then given a written warning, noting they would be subject to termination. [*Id.*]. On October 18, 2021, Plaintiffs were placed on a leave of absence to allow them time to comply with the vaccine requirement. [*Id.*]. On October 25, 2021, they were placed on unpaid suspension through October 31, 2021. [*Id.*]. Plaintiffs Speer, Dennis, and Duncan, and declarants Mr. and Mrs. Casselton declined to comply with the vaccination policy and were terminated effective November 1, 2021. [*Id.* at ¶ 54].

On October 28, 2021, Plaintiffs filed their Verified Class Action Complaint [Doc. 1], asserting claims for religious discrimination (Count 1) and failure to accommodate (Count 2) in violation of Title VII of the Civil Rights Act of 1964. The following day, Plaintiffs filed their Motion for Temporary Restraining Order [Doc. 2]. After conferring with the parties, the Court elected to treat the motion as one for a preliminary injunction and order further briefing. [Doc. 12]. The parties agreed that there was no need for a hearing and the Court would be able to rule on the motion based on the filings. [*Id.*].

Following briefing on the preliminary injunction, UCOR filed a Motion to Dismiss [Doc. 23], arguing that Plaintiffs failed to file discrimination charges with the EEOC prior to filing

suit. UCOR shows that Plaintiffs did not file discrimination charges with the EEOC until December 2, 2021, over a month after filing suit. [Doc. 1 at ¶ 56; [Docs. 28-1, 28-2 & 28-3]. Plaintiffs do not contend that the administrative process has been completed.

## II.    STANDARD OF REVIEW

A preliminary injunction is an "extraordinary and drastic remedy" which "should never be awarded as of right." *Munaf v. Green*, 553 U.S. 674, 690-91 (2008) (internal citation omitted). Generally, a preliminary injunction is issued to "protect plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits." Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2947 (3d ed.). In evaluating a motion for preliminary injunction, a district court considers four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). These factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Ne. Ohio Coal. for Homeless and Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). The burden is on the moving party to show they are entitled to an injunction, not on the party defending against it. *See* Fed. R. Civ. P. 65(b); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty., etc.*, 415 U.S. 423, 442-43 (1974).

However, "a district court is not required to make specific findings concerning each of the four factors . . . if fewer factors are determinative of the issue." *Nat'l Hockey League Players'*

*Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003); *D.T. v. Sumner Cnty. Schools*, 942 F.3d 324, 327 (6th Cir. 2019) (no error when district court dismissed after finding no irreparable harm). While Plaintiffs' likelihood of success on the merits is an important factor, because their claims are not constitutional, this factor is not determinative. *See City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits will often be the determinative factor.'"). A showing of irreparable harm, however, is indispensable and "[e]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *Sumner Cnty. Schools*, 942 at 327 (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

### III.    ANALYSIS

#### a.    Title VII Exhaustion

Plaintiffs claim UCOR discriminated against them on the basis of their religion and failed to accommodate their sincerely-held religious beliefs, in violation of Title VII. "[B]efore bringing suit under Title VII, a claimant must exhaust her administrative remedies." *Crowder v. Railcrew Xpress*, 557 F. App'x 487, 491 (6th Cir. 2014); *see* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1). To do so, a plaintiff must file an EEOC charge within 180 days of the allegedly unlawful employment practice, or, if the plaintiff has started proceedings with a state or local agency, within 300 days. *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351–52 (6th Cir. 2002); *see* U.S.C. § 2000e-5(e)(1). After the EEOC dismisses the charge and issues a right-to-sue letter, the litigant has 90 days to file a lawsuit. *Id.*; *see* U.S.C. § 2000e-5(f)(1). "These time limits do not constitute a jurisdictional prerequisite to filing suit, but are subject to waiver, estoppel, and equitable tolling." *Id.*

The parties dispute whether Plaintiffs may obtain injunctive relief prior to completing the administrative process. Plaintiffs note that administrative exhaustion is not a jurisdictional prerequisite to suit. [Doc. 27 at 2]. They argue that some courts have permitted employees to pursue injunctive relief while an EEOC charge is pending, particularly when the relief the plaintiff seeks is to maintain the status quo pending a resolution of the administrative action. [*Id.* at 4]. Plaintiffs say they "do not seek a final adjudication of their right to be protected against the discriminatory conduct of Defendant, but instead, merely seek temporary relief pending the action of the EEOC." [*Id.*].

A close reading of the Complaint does not bear out this characterization. Plaintiffs do acknowledge the necessity of administrative exhaustion, but explain that they "seek only that this Court find that the damages described in this paragraph were inflicted upon Plaintiffs following exhaustion of the EEOC process." [Doc. 1 at ¶ 55]. Yet the Complaint seeks, *inter alia*, (i) a judgment that UCOR willfully or recklessly violated Title VII; (ii) a permanent injunction preventing UCOR from terminating Plaintiffs and those similarly situated due to religious objections; (iii) an award of damages for back pay, reinstatement or front pay, interest, punitive damages, and compensatory damages; and (iv) an award of attorneys' fees and costs.

These facts are quite different than those in *Drew v. Liberty Mutual Insurance Company*, 480 F.2d 69 (5th Cir. 1973), on which Plaintiffs rely. In *Drew*, the plaintiff alleged, *inter alia*, that she had been retaliated against in violation of Title VII when she was fired the day after filing a charge of discrimination with the EEOC. The United States Court of Appeals for the Fifth Circuit found that "in the limited class of cases . . . in which irreparable injury is shown and likelihood of ultimate success has been established . . . the individual employee may bring her own suit to

6

maintain the status quo pending the action of the Commission on the basic charge of discrimination." *Id.* at 72. The Fifth Circuit noted:

> It must be remembered that this is not an action brought by Ms. Drew for a final adjudication of her right to be protected against the alleged discriminatory conduct of the defendant. That matter is being considered by the Commission in the usual course. She normally would not be permitted to file a suit on the merits unless the Commission had been unable for a period of 180 days to effect conciliation. The 180-day provision, of course, does not apply here, because the action brought by Ms. Drew is merely one to seek temporary relief pending the action of the Commission.

*Id.* at 73, n.5. That is not the case here. To the contrary, the Complaint explicitly seeks a judgment that UCOR violated Title VII and an award of back pay, punitive and compensatory damages, and front pay or reinstatement.

Moreover, *Drew* is not binding on the Court. The holding in *Drew* has been criticized by at least one court in the Sixth Circuit, *see Troy v. Shell Oil Co.*, 378 F. Supp. 1042 (E.D. Mich. 1974), and distinguished by the Sixth Circuit, *see Jerome v. Viviano Food Co., Inc.*, 489 F.2d 965 (6th Cir. 1974) (where there was no existing employer/employee relationship, monetary damages could compensate for injury and irreparable harm not shown). In *Vaughn v. Chrysler Corp.*, 382 F. Supp. 143 (E.D. Mich. 1974), the court found the reasoning of *Drew* inapposite because the *Vaughn* complaints "quite obviously" sought "adjudication of the merits of the discrimination claims, and there is no allegation of a discharge in retaliation for filing a complaint with the E.E.O.C." *Id.* at 148. The court did base its dismissal on the understanding that administrative exhaustion was a jurisdictional bar to suit. *Id.* at 147. Nonetheless, the factual distinctions the *Vaughn* court drew apply with equal force here.

As others have done, the Court acknowledges that "[t]he propriety of asserting jurisdiction prior to the exhaustion of EEOC remedies for the limited purpose of granting temporary injunctive relief is a question which has divided authorities." *Doerr v. B.F. Goodrich Co.*, 484 F. Supp. 30,

7

321 (N.D. Ohio 1979). Within the Sixth Circuit, dismissal for failure to exhaust administrative remedies appears to be the favored approach, even when injunctive relief is sought. *See Johnson v. Tyson Foods, Inc.*, 2022 WL 2161520, *8 (W.D. Tenn. June 15, 2022) ("What is more, Plaintiff alleges that Tyson has already terminated her employment. Any injunctive relief related to Tyson's vaccine mandate is no longer available to Plaintiff."); *see also Reed v. Tyson Foods, Inc.*, 2022 WL 2134410, *9-10 (W.D. Tenn. June 14, 2022) (distinguishing *Drew* line of precedent because plaintiff had not received a notice of right to sue or even filed an EEOC charge). At least one court has suggested that if the criteria for a preliminary injunction are not met, the "plaintiff would be required to exhaust her administrative remedies prior to coming into this Court." *Donald v. Ray*, 377 F. Supp. 986, 987 (E.D. Tenn. 1974). Because the Sixth Circuit does not appear to have spoken to this issue directly, the Court will nonetheless weigh the preliminary injunction factors.

### b. Likelihood of Success on the Merits

To establish a prima facie case of religious discrimination under Title VII, a plaintiff must show that (1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed his employer about the conflict; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement. *Reed v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 569 F.3d 576, 580 (6th Cir. 2009). Once an employee has established a prima facie case, the defendant has the burden of showing that it could not reasonably accommodate the employee without undue hardship. *Id.* "For the purpose of religious accommodations, 'to require an employer to bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs is an undue hardship.'" *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007) (*quoting Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994)). UCOR does not appear to dispute, at this stage, that Plaintiffs have sincerely-held religious beliefs

8

that conflict with the vaccine requirement, that they informed UCOR of the conflict, or that they were terminated for failing to comply with the requirement. Rather, the disputed issue is whether UCOR could reasonably accommodate the employees' sincerely-held religious beliefs without undue hardship.

UCOR presents evidence of their interactive religious exemption review process and their calculation of the costs of providing a religious accommodation to Plaintiffs. UCOR developed a matrix to evaluate possible accommodations, including the following:

- Weekly testing – mandatory for all unvaccinated employees;

- Enhanced Face Coverings (KN-95 masks) – mandatory for all unvaccinated employees;

- Mask fit tests (required for KN-95 masks) – mandatory for all unvaccinated employees;

- Limited task reassignment;

- Job reassignment;

- Work location adjustments, isolation, distancing;

- Leave of absence;

- Daily self-health check; and

- Telework.

[Doc. 16 at ¶ 38]. In addition to the direct monetary impact, UCOR considered whether the accommodations would decrease workplace efficiency, infringe on the rights of other employees, require other employees to do more hazardous or burdensome work, conflict with another law or regulation, or compromise workplace safety. [*Id.* at ¶ 40].

Through the declaration of Charles Malarkey [Doc. 16], UCOR shows that Plaintiffs Speer, Dennis, and Duncan and declarants Mr. and Mrs. Casselton could not perform their jobs remotely and all had worked onsite during the pandemic. [Doc. 16 at ¶¶ 11, 13, 16, 19, 48]. More generally,

9

UCOR indicates it considered telework as a potential accommodation, but that there are relatively few jobs with the company that can be performed remotely, even in part. [*Id.* at ¶ 47]. Even with partial remote work, employees would still have to be present on site at regular intervals for meetings and specific work assignments, thus necessitating mandatory testing and masking. [*Id.*].

With regard to weekly testing, UCOR requires weekly testing for unvaccinated employees. UCOR performs this testing onsite to ensure effective and timely testing. [Doc. 16 at ¶ 44]. The cost associated with weekly testing would be $370 per employee, per week, totaling $1,885,520 per year for the 98 employees that sought a religious exemption from the vaccine requirement. [Doc. 16 at ¶ 45]. As to enhanced face coverings, UCOR purchases masks for unvaccinated employees, including those with a medical exemption to vaccination. [*Id.* at ¶ 45]. UCOR estimates that the cost of two KN-95 masks per week for 98 employees would total $10,192 per year. [*Id.*]. In addition, UCOR estimates a $375 annual cost for a mask fit per employee, though this was, standing alone, considered a *de minimis* burden. [*Id.*; Doc. 16-15].[1]

Next, UCOR shows that it determined that indefinite leaves of absence were not a workable accommodation due to the costs associated with backfilling the job duties of the existing workforce. [*Id.* at ¶ 50]. In other words, leaves of absence for existing employees would require hiring and training temporary replacements, in addition to reintegrating employees who later return. [*Id.*]. This places a burden on existing employees, who must often work overtime to cover gaps in production and work scope. *Id.*

Finally, Malarkey avers that the testing accommodation itself presents additional workplace safety costs since there is an increased risk of getting or transmitting COVID-19 in a

---

[1] In the UCOR matrix, limited task reassignment, job reassignment, work location adjustments/ isolation / distancing were also found to create a *de minimis* burden. [Doc. 16-15]. Based on the information in the matrix and the arguments of the parties, it does not appear that Plaintiffs seek these specific accommodations. In any event, Plaintiffs present no evidence regarding how these measures would work or the burden they would impose on UCOR.

workplace of both vaccinated and unvaccinated individuals. [*Id.* at ¶ 51]. UCOR says this problem is due in part to the delay between testing and results. [Doc. 15 at 28]. Without wading into the merits of the vaccine, the Court notes that Plaintiffs concede it is highly effective in preventing serious illness related to COVID-19. [Doc. 21 at 15]. And the Sixth Circuit has held that a proposed accommodation that would potentially have an adverse impact on other employees "clearly shows" that the employer would suffer an undue hardship in attempting to make that accommodation. *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 520-21 (6th Cir. 2002) (affirming dismissal of plaintiff's Title VII religious discrimination claim); *see also EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 273 (3d Cir. 2010) ("A religious accommodation that creates a genuine safety or security risk can undoubtedly constitute an undue hardship."). Thus, like the leave of absence accommodation, weekly testing for unvaccinated employees has the potential to burden other employees.

Plaintiffs characterize UCOR's concerns as "purposely created" by UCOR, arguing UCOR is claiming an undue burden because the accommodations "present some hypothetical inconvenience." [Doc. 21 at 11]. Essentially, Plaintiffs argue that UCOR is creating the rules and then claiming it is too expensive to follow those same rules, necessitating Plaintiffs' termination. Plaintiffs say that there is no requirement that UCOR conduct COVID testing twice a week or pay $185 per test to do so. [*Id.* at 12]. Plaintiffs argue that KN-95 masks are not necessary because neither the CDC nor the Safer Federal Workforce Task Force require KN-95 masks. [*Id.*]. Similarly, Plaintiffs say "mask fit tests" are not required and most class members are already annually fitted for masks, making this $36,750 cost unnecessary as well. [*Id.* at 13]. Their reply does not address any other costs or accommodations or suggest what accommodations UCOR could make that would not impose an undue burden. Plaintiffs do not argue that their jobs can be performed remotely.

Under these circumstances, Plaintiffs have not shown they have a strong likelihood of success on the merits and this factor therefore weighs against granting injunctive relief. As the Sixth Circuit has observed, "hypothetical hardships that an employer thinks might be caused by an accommodation that has never been put into practice" are subject to skepticism. *Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1085-86 (6th Cir. 1987) (*quoting Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975)). Here, UCOR has experience with many of the possible accommodations because it has used them over the course of the pandemic, requiring masks of all on-site employees, moving some employees to temporary telework, and conducting on-site weekly testing. [*See* Doc. 3 at 10]. In this sense, UCOR is "on stronger ground" because it "has attempted various methods of accommodation and can point to hardships that actually resulted." *Id.* at 1086. UCOR's evidence of the cost of various accommodations suggests that weekly testing and enhanced face coverings would impose more than a *de minimis* burden on the company. UCOR has thus properly "present[ed] evidence of undue hardship" rather than "rely[ing] merely on speculation." *Id.*

While Plaintiffs take issue with the necessity of these precautions and the accuracy of UCOR's estimates, they have not presented evidence to rebut UCOR's showing, nor have they shown what accommodations would be reasonable. They have not presented any evidence that less costly accommodations would pose a lesser burden on UCOR. This is in part because the overall burden on UCOR is not measured simply by dollars and cents, but by the impact on the efficiency of the workforce, the burden shifted to other employees, and the increased risk of transmission of illness.

Finally, Plaintiffs urge that their religious exemption requests were met with a blanket denial while medical accommodations were not. Plaintiffs submit an email from R.W. Smalley,

who appears to be a subcontract administrator at UCOR. [Doc. 13-1 at 5]. The identity of the recipients and their respective roles is not clear, but Mr. Smalley states that "UCOR has made the decision to **not** approve any requests for religious exemption." [*Id.*]. UCOR does not dispute that all 98 requests for religious exemption were denied. UCOR notes, however, that the undue hardship standard under Title VII is lower than that for ADA accommodations. [Doc. 15 at 24]; *See Shepherd v. Honda of Am. Mfg., Inc.*, 160 F. Supp.2d 860, 871 (6th Cir. 2001) ("The employee's burden [to show reasonable accommodation in an ADA case] is not onerous. The plaintiff must merely suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed the benefits." (internal citation omitted)); *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 419 (6th Cir. 2020) (to counter an ADA plaintiff's *prima facie* case, defendant must show special, usually case-specific circumstances that demonstrate undue hardship in the particular circumstances, or show that the proposed accommodation eliminates an essential job requirement). More significantly, Plaintiffs have not put any evidence into the record that any of the 98 putative class members had significantly different circumstances that would make a different accommodation appropriate. For example, Plaintiffs do not dispute that telework was not an option for any of the named Plaintiffs.

Plaintiffs seek injunctive relief requiring UCOR to provide individualized assessments for the purpose of reasonably accommodating each Plaintiff's sincerely-held religious belief regarding vaccines. [Doc. 13 at 1, n.1]. Certainly, "the reasonableness of an employer's attempt at accommodation . . . must be determined on a case-by-case basis; what may be a reasonable accommodation for one employee may not be reasonable for another." *Smith*, 827 F.2d at 1085. Yet Mr. Malarkey avers that UCOR did an interactive assessment with each employee who requested a religious exemption and determined that there was no reasonable accommodation for

13

Plaintiffs that would not impose an undue burden. The rejection of all 98 accommodation requests does give the Court some pause, as it undercuts UCOR's assertion that the requests were individually assessed. Yet Plaintiffs have presented no evidence that UCOR rejected a reasonable proposed accommodation as to any identified employee.[2] There is no evidence, for example, that any member of the putative class would have been able to perform their job duties remotely or in isolation. Indeed, each of the named Plaintiffs worked onsite throughout the pandemic and their jobs are not amenable to remote work, and UCOR represents that relatively few positions in its work force could be performed remotely, even in part.

Finally, Plaintiffs did not exhaust their administrative remedies prior to bringing suit. Nothing in the record indicates they have since completed the administrative process. Their Complaint is thus subject to dismissal on this basis alone, further indicating they do not have a strong likelihood of success on the merits. *See Gason v. Dow Corning Corp.*, No. 15-cv-10770, 2015 WL 1412578, *3 (E.D. Mich. March 26, 2015) (Title VII claim could not form the basis for injunctive relief because plaintiff failed to exhaust administrative process); *Does 1-6 v. Mills*, 16 F.4th 20, 36 (1st Cir. 2021) ("[O]ur court has expressly declined to provide such preliminary relief, and has declined to 'reach the question of what circumstances would justify a district court in granting preliminary relief in such cases,' finding only that '[a]t minimum, an aggrieved person seeking preliminary relief outside of the statutory scheme for alleged Title VII violations would have to make a showing of irreparable injury sufficient in kind and degree to justify the disruption

---

[2] Several other accommodations were proposed by Plaintiffs or putative class members, but Plaintiffs do not argue these accommodations would be reasonable or pose a *de minimis* burden on UCOR. For example, putative class members Dawn and David Casselton propose two years of severance pay as a reasonable accommodation [Docs. 16-9 & 16-10], while Plaintiff Speer suggests he be allowed to work alone, receive his own office, and be trained with other unvaccinated employees [Doc. 16-5 at 2].

14

of the prescribed administrative process.'" (quoting *Bailey v. Delta Air Lines, Inc.*, 722 F.2d 942, 944 (1st Cir. 1983))).

### c. Irreparable Harm

Irreparable harm is an "indispensable" requirement for granting a preliminary injunction. *D.T., et al. v. Sumner Cnty. Sch., et. al.*, 942 F.3d 324, 327 (6th Cir. 2019). Plaintiffs must show "certain and immediate" harm, not harm that is "speculative or theoretical." *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633 (2021) (*quoting Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020)). "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cnty. Govt.*, 305 F.3d 566, 578 (6th Cir. 2002). Thus, "[t]he fact that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay." *Id.* at 579; *see also Aluminum Workers Int'l Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir. 1982) (absent a showing that an employer will be unable to provide backpay or reinstatement, "we hold that loss of employment…is not irreparable harm and will not support a claim by the union for injunctive relief"); *Hayes v. City of Memphis*, 73 Fed. App'x 140, 141 (6th Cir. 2003) (holding loss of employment "is fully compensable by monetary relief and is, therefore, not irreparable").

Sixth Circuit precedent is clear that the loss of employment, standing alone, is not irreparable harm. Relatedly, Plaintiffs allege they have suffered anxiety, stress, and disruption of interpersonal relationships due to their terminations. While these harms may be very real, they are common to many, if not most, Title VII actions and do not render Plaintiffs' harm irreparable.

15

Plaintiffs identify several other harms related to their loss of employment that they contend are irreparable: (i) loss of health insurance, (ii) loss of security clearance, (iii) inability to obtain new employment due to highly specialized jobs; (iv) loss of work experience and the opportunity to compete for promotions; and (v) impossibility of reinstatement.

i.  Health Insurance

First, Plaintiffs argue they will lose health insurance and as a result, be unable to pay for certain medications and medical devices. They point to two specific examples. First, Mr. and Mrs. Casselton aver that without insurance, Mr. Casselton's medications will cost approximately $1,500 per month. [Doc. 13-5]. Without health insurance, Mr. and Mrs. Casselton indicate they will have to begin paying for the medications by withdrawing funds from their 401k. [*Id.*]. Without discounting the obvious hardship of these circumstances, the Casseltons do not aver that they will be unable to obtain critical medical care or obtain new health insurance. This potential harm thus has a remedy at law. Further confirming that the damages are monetary, the Casselton's proposed accommodation to UCOR was payment of two years' severance. [Docs. 16-9 & 16-10].

Second, Cynthia Ogle (a former employee of a UCOR subcontractor) declares that her health benefits were terminated on October 31, 2021, that she was recently diagnosed with sleep apnea, and that she takes medication for fibromyalgia. [Doc. 13-2 at 1]. She avers she will be unable to afford her CPAP machine and medication without health insurance. [*Id.*]. Ms. Ogle was not an employee of UCOR or terminated by UCOR, but UCOR did evaluate her accommodation request. [*See* Doc. 15 at 8, n. 1]. It is not clear from the record whether a preliminary injunction against UCOR would have any impact on Ms. Ogle, *i.e.* whether UCOR has the ability to reinstate her employment or health benefits. Ms. Ogle's declaration attaches evidence that her employer advised her of her eligibility for continuation of health coverage under COBRA. [Doc. 13-2 at 4].

16

Though she alleges she will not be able to pay for her CPAP machine and medication without health insurance, she does not allege that she will not be able to obtain new health insurance.[3] The availability of replacement insurance cuts against Ms. Ogle's assertion that she will suffer irreparable harm in the absence of an injunction. *Cf. Crawford v. Trustees of Plumbers & Steamfitters Loc. Union No. 43 Health & Welfare Fund*, No. 1:07-cv-228, 2007 WL 2905613 (E.D. Tenn. Oct. 2, 2007) (loss of health insurance weighed in favor of plaintiffs but weight was lessened due to availability of COBRA and absence of ongoing medical conditions).

Plaintiffs' asserted harm from the loss of health insurance is also markedly different from the facts of the primary case on which they rely, *International Resources, Inc. v. New York Life Insurance Co.*, 950 F.2d 294 (6th Cir. 1991). There, the Sixth Circuit found that interrupted medical care could constitute irreparable harm. An individual covered by a group health insurance policy was severely injured in an automobile accident. Mr. Smith was mute, quadriplegic, and required nursing care twenty-four hours a day. *Id.* When the insurance company proposed cancelation of the group health insurance policy under which Mr. Smith was covered, the policyholder brought suit and sought a preliminary injunction. *Id.* The district court found that the loss of funds would adversely affect the maintenance of Mr. Smith's health, that the litigation had made retention of qualified medical caretakers difficult, that the interruption of Mr. Smith's care might cause irreversible physical harm to Mr. Smith, and that only the parties to the litigation were at risk of any substantial harm. *Id.* at 302. It issued a preliminary injunction requiring the insurance company to continue paying for Mr. Smith's care. On appeal, the Sixth Circuit found the district court's determination was not clearly erroneous.

---

[3] Similarly, Plaintiff Dennis declares that if left uninsured, she fears she will not be able to afford necessary medical care for herself and her family. [Doc. at 3-2 ¶ 8]. Yet she does not say that she cannot afford or will not be able to obtain other health insurance.

While Plaintiffs' cited medical concerns are undoubtedly important, their circumstances differ dramatically from that of Mr. Smith. Moreover, the substantive issue in the *International Resources* case was whether Mr. Smith would continue to receive benefits under the policy. Discontinuation of his insurance was not a speculative or possible side effect of the harm alleged, but the direct harm sought to be avoided by the injunction and the lawsuit. Plaintiffs do not allege that they will be unable to obtain replacement insurance or that they will be denied adequate medical care, so the loss of health insurance is insufficient to demonstrate irreparable harm.

ii. <u>Security Clearance</u>

Second, Plaintiffs argue that they will or have lost their security clearances upon termination. Plaintiffs have not presented any argument as to why this harm is irreparable or explained how it impacts them.

iii. <u>Highly Specialized Jobs</u>

Third, Plaintiffs contend their jobs are specialized and they may be unable to find comparable work in the area. [Doc. 21 at 3]. Specifically, David and Dawn Casselton aver that they worked as Radiological Control Technicians, that their positions are highly specialized, and that they believe they would have to travel outside of Tennessee to find comparable work. [Docs. 13-4 & 13-5]. Plaintiffs cite *Becton v. Thomas*, 48 F. Supp. 2d 747, 764 (W.D. Tenn. 1999), in which the court found irreparable harm from the loss of employment and issued a preliminary injunction requiring the plaintiff's reinstatement.

While persuasive authority, *Becton* is neither controlling nor directly on point. The plaintiff in *Becton* alleged that the defendant violated her First Amendment rights, making her likelihood of success on the merits more significant in the injunction analysis. *See id.* ("When a plaintiff seeks a preliminary injunction based on an allegation that the defendant violated her First Amendment

18

rights, the plaintiff's ability to show a likelihood of success on the merits is often the determinative factor."). Having found a "substantial likelihood of success" on her constitutional claim, the court also found that plaintiff demonstrated irreparable harm in the absence of injunctive relief. *Id.* As the Court has explained, Plaintiffs here have not shown a substantial likelihood of success on the merits. The *Becton* plaintiff's former position was also singular – she was the only Chief Deputy Clerk in the Probate Clerk's office. *Id.*

### iv. Loss of Work Experience

Similarly, Plaintiffs argue that "lost work experience and the opportunity to compete for promotions" can constitute irreparable harm. *See Johnson v. City of Memphis*, 444 F. App'x 856, 860 (6th Cir. 2011). But Plaintiffs have presented no specific evidence that they will suffer such harm. *See Manlove v. Volkswagen Aktiengellschaft*, 2019 WL 2291894, * 14 (E.D. Tenn. May 17, 2019) (no irreparable harm where plaintiff failed to show his current placement would cause him to lose specific skills, be unable to compete for promotions, or be unable to gain work experience necessary to receive promotion). Plaintiffs point only to the declarations of David and Dawn Casselton that their special skills and training in the field of decommissioning and demolishing nuclear facilities are not easily transferable or marketable in this area. [Doc. 21 at 8]. These jobs may be specialized, but Plaintiffs present no specific evidence that their former positions are the only such positions available, that they will lose skills necessary to obtain other employment, or that they are missing out on advancement opportunities.

### v. Impossibility of Reinstatement

Finally, Plaintiffs argue that UCOR has or is beginning to fill positions previously held by Plaintiffs. Plaintiffs contend this eliminates the possibility of reinstatement, the preferred remedy for wrongful terminations. [Doc. 13 at 7]. While the Sixth Circuit has found irreparable harm based

in part on an employer's inability to reinstate affected employees, that case, too, is distinguishable. In *Aluminum Workers International Union, AFL-CIO v. Consolidated Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir. 1982), the court held that "[a]bsent some indication of action on the part of the employer which could jeopardize its ability to reinstate affected employees or to pay them wages for the period of unemployment, we hold that loss of employment . . . is not irreparable harm and will not support a claim . . . for injunctive relief." *Id.* at 443. In the absence of evidence that a solvent company could not render backpay or reinstate the affected employees, the court found no irreparable harm. As in *Aluminum Workers*, there is no indication that UCOR will be unable to satisfy a judgment against it or that any Plaintiff holds such a singular position that he or she could not be reinstated to the same or a comparable position.

The Supreme Court of the United States has made clear that in the absence of a "genuinely extraordinary situation," the loss of employment does not constitute irreparable harm. *Federoff v. Geisinger Clinic*, 571 F. Supp.3d 376 (M.D. Pa. 2021) (quoting *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)). Upon consideration of the harms alleged, the Court finds that Plaintiffs have not shown they will suffer a certain and immediate harm that is not fully compensable by monetary damages.

### d. Substantial Harm to Others & Public Interest

Plaintiffs do not explicitly address whether substantial harm to others would occur in the absence of a preliminary injunction, arguing only that harm to Plaintiffs and their families outweighs any burden on UCOR. [Doc. 3 at 10]. UCOR contends that harm to others is more likely if injunctive relief is granted, as the risk of workplace transmission of COVID-19 is greater when some employees are not vaccinated. As Plaintiffs have not shown any substantial harm to those outside the litigation in the absence of an injunction, this factor weighs slightly in favor of UCOR.

20

As to public interest, this case presents competing values. On one hand, the public has an interest in enforcement of Title VII's protection of sincerely-held religious beliefs and the elimination of discriminatory employment practices. Here, however, the Court has found that Plaintiffs have not shown a substantial likelihood of success on the merits. And as even Plaintiffs acknowledge, there is also a strong public interest in reducing the spread of COVID-19. [*See* Doc. 3 at 11].

Having considered each factor in the preliminary injunction analysis, the Court finds that Plaintiffs have not shown entitlement to the "extraordinary relief" of a preliminary injunction and the Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2] will be **DENIED**.

IV.        **Motion to Dismiss**

UCOR moves to dismiss this action due to Plaintiffs' failure to exhaust their administrative remedies prior to filing suit. [Doc. 23]. In their Complaint, Plaintiffs alleged that they "have or immediately will file formal charges of discrimination with the Equal Employment Opportunities Commission." [Doc. 1 at ¶ 56]. UCOR's reply brief attaches the formal discrimination charges filed by Plaintiffs Speer, Dennis, and Duncan, which were filed about a month after the Complaint. [Docs. 28-1, 28-2 & 28-3]. These charges are central to Plaintiffs' claims and referenced in the Complaint. Accordingly, the Court may consider the EEOC charges without converting the motion to one for summary judgment. *See Ryniewicz v. Clarivate Analytics*, 803 F. App'x. 858, 863 (6th Cir. 2020) ("In evaluating a motion to dismiss, [the Court] 'may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are

central to the claims contained therein.'" (quoting *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016))).

As explained in § III.a, *supra*, "[e]xhaustion of administrative requirements is a precondition to filing a Title VII suit." *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008). Title VII's charge-filing requirement is a "mandatory" claim-processing rule. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851 (2019). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) (quoting *Hamer v. Neighborhood Housing Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). These requirements are not merely technical, but serve the important purpose of requiring employers and employees to work with an EEOC counselor to resolve their dispute prior to bringing suit. *See Lockett*, 259 F. App'x at 786 ("This requirement exists so that the EEOC will have an opportunity to convince the parties to enter into voluntary settlement, which is the preferred means of disposing of such claims."). Moreover, the scope of the EEOC charge impacts what claims can be brought in federal court – "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

Thus, "[f]ailure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII or ADA Action." *Williams v. Northwest Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002) (noting that the time limits established by Title VII are not jurisdictional and affirming dismissal); *see Bryant v. Wilkie*, 834 F. App'x 170, 175 (6th Cir. 2020) (affirming district court's dismissal of Title VII claims for failure to timely exhaust administrative remedies even though defendant moved for summary judgment). Failure to exhaust administrative remedies is an affirmative defense, and the defendant bears the burden of pleading and proving that failure.

22

*Lockett*, 259 F. App'x at 786. In *Lockett v. Potter*, the Sixth Circuit found that the defendant appropriately raised the defense in a motion to dismiss. *Id.* The plaintiff responded by filing an affidavit in opposition to the motion. *Id.* There was no indication, however, that the plaintiff had exhausted his administrative remedies. *Id.* At oral argument, the plaintiff was likewise unable to point to any evidence that administrative requirements had been met. *Id.* Accordingly, the Sixth Circuit held that the district court's dismissal for failure to exhaust was not in error. *Id.*

UCOR shows that Plaintiffs did not file EEOC charges until after they filed the Complaint, see Docs. 28-1, 28-2 & 28-3, and Plaintiffs concede that they did not exhaust their administrative remedies prior to filing suit. [Doc. 27]. Instead, they primarily argue that injunctive relief may be granted while administrative action is still pending. The Court has now determined that injunctive relief is not warranted.

Plaintiffs also argue that dismissal under these circumstances is without prejudice to refiling, so dismissal would not serve judicial economy. Yet in the months since the Complaint was filed, Plaintiffs have not submitted any evidence that they pursued or completed the administrative process. UCOR carried its burden of showing a failure to exhaust prior to filing, and Plaintiffs have not rebutted that showing.

As the undisputed facts show that Plaintiffs did not exhaust their administrative remedies prior to filing suit and nothing in the record indicates they have since completed the administrative process, their claims are subject to dismissal. *See West v. Dep't of Veterans Affairs*, 2021 WL 1294786, *1-2 (W.D. Ky. April 7, 2021) (where plaintiff filed an informal EEOC complaint but had not received notice of right to sue, dismissal without prejudice was appropriate); *Phoenix v. Esper*, 2019 WL 6037663, *6 (W.D. Ky. Nov. 14, 2019) ("Failure to exhaust administrative remedies before filing a Title VII claim in court is grounds for dismissal."); *Rodriguez v. Social*

23

*Security Admin.*, 2021 WL 1027575, *5 (W.D. Mich. Feb. 25, 2021) (granting motion to dismiss for lack of exhaustion where plaintiff's Title VII claims were still pending at the EEOC); *Rollison v. Kendall*, 2022 WL 2306866, *4 (S.D. Ohio June 27, 2022) (where EEOC claim was filed well after complaint and also untimely, dismissing action because "[a]dministrative remedies must be exhausted *before* seeking federal court relief"). Accordingly, UCOR's Motion to Dismiss [Doc. 23] will be **GRANTED**.

## V. CONCLUSION

Plaintiffs have not met their burden of demonstrating that injunctive relief is appropriate and the Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2] will therefore be **DENIED**. Because Plaintiffs did not exhaust their administrative remedies prior to filing suit and nothing in the record indicates they have since done so, Defendant UCOR, LLC's Motion to Dismiss [Doc. 23] will be **GRANTED** and this action **DISMISSED WITHOUT PREJUDICE**. A separate judgment shall enter.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
CHARLES E. ATCHLEY, JR.
UNITED STATES DISTRICT JUDGE

24